UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 92-1686

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOE EVBUOMWAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas

_____

( May 18, 1993 )

Before GOLDBERG and WIENER, Circuit Judges.*

GOLDBERG, Circuit Judge:

    Joe Evbuomwan appeals his sentence for one count of credit card fraud.  Finding that the district court misapplied U.S.S.G § 1B1.3 in calculating Evbuomwan's sentence, we remand this case for resentencing.

* Judge Garwood participated in the oral argument of this case but subsequently thereto recused himself.  Accordingly, he did not participate in this decision.  The case is being decided by a quorum.  28 U.S.C. 46(d).

BACKGROUND and PROCEEDINGS BELOW

Evbuomwan pled guilty to one count of credit card fraud, in violation of 18 U.S.C. § 1341, for obtaining an Exxon credit card under a false name. Evbuomwan was sentenced to eighteen months in custody plus two years of supervised release.

The total loss attributable to Evbuomwan's credit card fraud, the offense to which Evbuomwan pled guilty, was $1,500. However, the trial court calculated Evbuomwan's sentence using a base offense level of $90,471. The district court reached the $90,471 figure by applying § 1B1.3 of the Federal Sentencing Guidelines, under which a defendant's base offense level may be adjusted to account for the "reasonably foreseeable acts" of others taken in the "furtherance of a jointly undertaken criminal activity."

Of the $90,471, at least $66,000 is attributable to losses arising from the "Bite Electronics" check fraud scheme perpetrated against the NCNB Bank by Michael Aakhideno and Mark Dorenuma. Aakhideno and Dorenuma opened a checking account at the NCNB Bank under the name of "Bite Electronics," and wrote checks on that account to pay off fraudulently obtained credit cards. Evbuomwan was never charged with participating in this check fraud scheme or with obtaining the credit cards paid off with the NCNB checks.

Evbuomwan's appeal challenges the district court's application of § 1B1.3 in calculating Evbuomwan's base offense level. Specifically, Evbuomwan contends that the district court erred by including the losses incurred by the NCNB bank as a result of the

2

Bite Electronics check fraud scheme in Evbuomwan's base offense level.  A "sentence imposed as a result of an incorrect application of the sentencing guidelines must be reversed even if reasonable." U.S. v. Mejia-Orosco, 867 F.2d 216, 218 (5th Cir. 1989) cert. den. 492 U.S. 924 (1989).

ANALYSIS

Under U.S.S.G § 1B1.3, effective at the date of Evbuomwan's sentencing in August 1992, a defendant's base offense level could be adjusted on the basis of "all acts and omissions committed or aided by the defendant, or for which the defendant would be otherwise accountable."  The commentary clarified when a defendant would be "otherwise accountable:"

> In the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, the conduct for which the defendant 'would be otherwise accountable' also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant.  Because a count may be broadly worded and include the conduct of many participants over a substantial period of time, the scope of the jointly-undertaken criminal activity, and hence the relevant conduct, is not necessarily the same for every participant.  Where it is established that the conduct was neither within the scope of the defendant's agreement, nor was reasonably foreseeable in connection with the criminal activity the defendant agreed to jointly undertake, such conduct is not included in establishing the defendant's offense level under this guideline.  U.S.S.G. § 1B1.3, Application Note 1.

Under § 1B1.3, to hold Evbuomwan accountable for the losses arising out of the Bite Electronics check fraud scheme, the government must prove that: (1) the Bite Electronics check fraud

3

scheme was within the scope of Evbuomwan's agreement to jointly-undertake criminal activities with Aakhideno and Dorenuma, and (2) that the check fraud scheme was reasonably foreseeable to Evbuomwan. While the district court found that Aakhideno and Dorenuma's participation in the check fraud scheme was reasonably foreseeable to Evbuomwan, the lower court did not address the question of whether the Bite Electronics check fraud scheme was within the scope of Evbuomwan's agreement to jointly undertake criminal activities with Aakhideno and Dorenuma, or even whether Evbuomwan agreed to jointly undertake any criminal activities with Aakhideno and Dorenuma.

The government's Pre-Sentence Report ("PSR") stated that "the total loss attributable to the defendant's involvement in the instant offense is $90,471." On the basis of this figure, the PSR recommended a sentence increase on the basis of a loss exceeding $70,000. Evbuomwan filed an objection to the PSR's computation of the amount of loss, claiming that much of the alleged loss arose from the fraudulent acts of third parties with whom Evbuomwan never agreed to jointly undertake criminal activities. The government responded to Evbuomwan's objection in an Addendum to the PSR. The response stated in part:

> The U.S. Secret Service Agents determined that the loss cause by Mark Dorenuma was approximately $ 90,471. Even though the defendant might not have had actual knowledge that Co-offender Dorenuma was so extensively involved in mail fraud and credit card fraud, it is reasonably foreseeable that the defendant would at least 'suspect' that his associate Dorenuma was involved in the same criminal activity that the defendant and the other two co-offenders were involved in. As stated in U.S.S.G § 1B1.3 Application Note 1, in the case of criminal

4

activity undertaken in concert with others, whether or not charged as a conspiracy, the conduct for which the defendant 'would be otherwise accountable' also includes conduct of others in furtherance of the execution of the jointly undertaken criminal activity that was reasonably foreseeable by the defendant.

Significantly, while the PSR Addendum found that it was reasonably foreseeable "that the defendant would at least 'suspect'" Dorenuma's activity, the PSR Addendum did not claim that Evbuomwan agreed to <u>jointly undertake</u> any criminal actions with Dorenuma.

At the sentencing hearing, Evbuomwan again objected to the PSR's calculation of his base offense level, claiming that the government had produced no evidence showing that Evbuomwan agreed to jointly undertake criminal activities with Aakhideno or Dorenuma. At the close of the hearing, the district court decided to calculate Evbuomwan's sentence using the base offense level recommended in the PSR, explaining:

> I believe that it was reasonably foreseeable when you got all these interconnected items of evidence, I don't have any question in my mind that these individuals each knew that the others were up to something they weren't suppose to be up to and I think he's responsible under the guidelines. So I'm going to adopt and accept the findings contained in the probation report as well as the addendum.

The district court's analysis repeats the error committed by the government in its Addendum PSR. While finding that the acts of Aakhideno and Dorenuma were reasonably foreseeable to Evbuomwan, the court never considered whether Evbuomwan agreed to jointly undertake criminal acts with Dorenuma and Aakhideno, and whether the Bite Electronics check fraud scheme was within the scope of any

5

such agreement.

The Commentary to § 1B1.3 dictates that a defendant can be sentenced on the basis of the "conduct of others <u>in furtherance of the execution of the jointly-undertaken criminal activity</u>" that was reasonably foreseeable by the defendant. Application Note 1. The Commentary emphasizes that if "it is established that the conduct was [not] within the scope of the defendant's agreement . . . such conduct is not included in establishing the defendant's offense level under this guideline." <u>Id</u>.

The revised Sentencing Guidelines, effective November 1, 1992, clarify the requirements for sentence enhancement under § 1B1.3 and describe a situation analogous to the case at hand in example number (5):

> Defendant O knows about her boyfriend's ongoing drug-trafficking activity, but agrees to participate on only one occasion by making a delivery for him at his request when he was ill. Defendant O is accountable under [§ 1B1.3] for the drug quantity involved on that one occasion. Defendant O is not accountable for the other drug sales mad by her boyfriend because those sales were not in furtherance of her jointly undertaken criminal activity (i.e., the one delivery).[1]

The above example illustrates that the mere knowledge that criminal activity is taking place is not enough for sentence

---

[1] The revised guidelines are not applicable to the defendant. However, as we explained in <u>United States v. Aquilera-Zapata</u>, 901 F.2d 1209, 1213 (5th Cir. 1990), if an amendment
was intended only to clarify Section 1B1.3's application and, therefore, implicitly was not intended to make any substantive changes to it or its commentary, we may consider the amended language of Application Note 1 to Section 1B1.3 even though it was not effective at the time of the commission of the offense in question.

6

enhancement under § 1B1.3. The rule does not hold accountable any person who reasonably suspects that criminal activity is taking place, regardless of their own involvement. To hold a defendant accountable for the crime of a third person, the government must establish that the defendant agreed to jointly undertake criminal activities with the third person, and that the particular crime was within the scope of that agreement.

A finding that Evbuomwan agreed to jointly undertake criminal activities with Aakhideno and Dorenuma, and that the Bite Electronics scheme was within the scope of that agreement, is an absolute prerequisite to calculating Evbuomwan's base offense level on the basis of the loss arising from the Bite Electronics scheme. If Evbuomwan did not agree to jointly undertake criminal activities with Aakhideno and Dorenuma, or if the Bite Electronics check fraud scheme was not in the scope of Evbuomwan's agreement, the government and lower court's findings that the check fraud scheme was reasonably foreseeable is simply irrelevant. The appropriate application of § 1B1.3 requires giving temporal primacy to the determination of whether a defendant has agreed to jointly undertake a criminal activity. If the defendant has not joined the criminal activity, it does not matter that he could have foreseen the criminal act. The reasonably foreseeable standard applies only <u>after</u> it is shown that a jointly undertaken activity has taken place.

In <u>U.S. v. Rivera</u>, 898 F.2d 442 (5th Cir. 1990), the district court, in calculating the defendant's base offense level, adopted

the government's pre-sentence report's inclusion of quantities of heroin attributable to the defendant's co-defendants. On appeal, the defendant argued that the district court erred in adopting the pre-sentence report because the record contained no "factual finding that Rivera was part of a jointly-undertaken scheme to distribute heroin with any of his co-defendants." Id. at 446. We remanded the case to the district court for resentencing, explaining that "in the absence of a joint undertaking or plan, the quantities of heroin distributed by persons other than Rivera should not have been included in the calculation of his base offense level." Id. See also U.S. v. Mir, 903 F.2d 825 (5th Cir. 1990)(remanded for resentencing because there was "no finding that the conduct of the other persons named in the indictment was within the scope of [defendant's] agreement").

The government concedes that the trial court never ruled on whether Evbuomwan agreed to jointly undertake the relevant criminal activity, but argues that this ruling is implicit in the trial court's adoption of the government's Addendum PSR. Unfortunately, the Addendum PSR also does not make a finding that Evbuomwan agreed to jointly undertake the criminal activity. The government maintains that this finding is implicit in the fact that the Addendum PSR correctly recites § 1B1.3 after stating its conclusion. We cannot assume that the trial court complied with § 1B1.3 by making an implicit ruling on the basis of the Addendum PSR's implicit finding. We do not tolerate inferences based on inferences. We remand this case for an explicit ruling on whether

8

Evbuomwan agreed to jointly undertake any criminal activity with Dorenuma and Aakhideno, and if Evbuomwan did agree, whether the Bite Electronics check fraud scheme was within the scope of that agreement.

CONCLUSION

For the foregoing reasons we VACATE Evbuomwan's sentence and REMAND this case to the district court for resentencing consistent with this opinion.

9